NONPRECEDENTIAL DISPOSITION

To be cited only in accordance with Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Submitted December 6, 2017[*]
Decided December 7, 2017

**Before**

MICHAEL S. KANNE, *Circuit Judge*

DIANE S. SYKES, *Circuit Judge*

DAVID F. HAMILTON, *Circuit Judge*

No. 17-2061

| | |
|---|---|
| CHARLES SCURLOCK, | Appeal from the United States District |
| *Plaintiff-Appellant*, | Court for the Southern District of Illinois. |
| | |
| *v.* | No. 15-cv-338-JPG-DGW |
| | |
| IRC, LP, d/b/a PENTHOUSE CLUB, | J. Phil Gilbert, |
| *Defendant-Appellee*. | *Judge*. |

## O R D E R

Charles Scurlock appeals the entry of summary judgment for his former employer, Penthouse Club, in this suit asserting age and race discrimination. We affirm.

Scurlock, who is black, was fifty years old when he was hired as a receptionist and "courtesy host" for Penthouse Club in April 2014. Within days his direct

---

[*] We have agreed to decide the case without oral argument because the briefs and record adequately present the facts and legal arguments, and oral argument would not significantly aid the court. FED. R. APP. P. 34(a)(2)(C).

supervisor, Jim Lindsey, began calling him "stupid," "dumb," "special," and "old," on their shared shifts, and this name calling happened "a lot of times."

One very early morning in November, Scurlock was involved in a dispute at an adjacent nightclub and told by the police to leave. Outside in the parking lot, Scurlock ran into a coworker, Larry Scott, who hurled a racial epithet at him and screamed that he had been "written up." Scurlock texted Lindsey to ask why he was being written up. After Lindsey called him, Scurlock described the morning's incident, told him about Scott's use of the racially derogatory term, and complained that Lindsey had called him "old" and other such things. Lindsey told Scurlock that he was not being written up and should return to work, and Scurlock replied that he would not return unless something was done about the name calling. Lindsey told Scurlock that he couldn't do anything about the racial epithet but assured him that it would not happen again. Scurlock rebuffed Lindsey's request to return to work, saying that he wanted to speak to a supervisor above Lindsey's rank.

Scurlock eventually spoke with manager Rich Overstreet, who promised to investigate and get back to him. From this conversation, as well as his conversation with Lindsey, Scurlock had the impression that he had been fired, so he did not return to work. When he did not show up for his scheduled shift on November 24, the company determined that he had quit his job and recorded the termination as a "voluntary termination."

Scurlock then brought this suit, asserting that Penthouse—through racial slurs such as Scott's—violated Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-2, by subjecting him to a hostile work environment and constructive discharge. He asserted that Penthouse—through Lindsey's repeated age-based comments—violated the Age Discrimination in Employment Act, 29 U.S.C. § 621–34, also because of a hostile work environment and constructive discharge.

The district court granted summary judgment to Penthouse. The judge reasoned that Scurlock's hostile-work environment claim based on race failed because he could not point to evidence that Scott's use of the racially derogatory term was sufficiently severe or pervasive to create an objectively hostile work environment; the encounter happened outside of work, and Scott was not in Scurlock's chain of command. And since Scurlock did not produce sufficient evidence that would permit a finding of a racially hostile work environment, he could not establish the intolerable conditions necessary to support a constructive-discharge claim. As for Scurlock's

age-discrimination claim, the court acknowledged that a reasonable jury could deem Lindsey's name calling was insulting and pervasive, but concluded that no reasonable jury could find that this made Scurlock's work environment so intolerable that he was compelled to resign. In any event, the court added, once Scurlock had reported Lindsey's conduct to Overstreet, Scurlock did not remain on the job long enough to give Penthouse a reasonable opportunity to remedy it.

On appeal Scurlock generally challenges the district court's conclusion that he failed to present any evidence to establish a race-based hostile work environment. But the district court properly concluded that Scurlock did not present evidence that the harassment was sufficiently severe or pervasive. "[O]ne utterance of the n-word has not generally been held to be severe enough to rise to the level of establishing liability," even though "such disrespectful language is deplorable and has no place in the workforce." *Nichols v. Mich. City Plant Planning Dept.*, 755 F.3d 594, 601 (7th Cir. 2014). Scott's racial epithet was highly offensive and wholly unacceptable, but summary judgment on this claim was proper because this single incident took place outside of the workplace by an employee who did not supervise Scurlock.

Scurlock also argues, again in only general terms, that the district court erred by finding the evidence insufficient to permit an inference of age-based hostile work environment. But he misreads the court's ruling. The court conceded that Lindsey's name calling was "humiliating" and that "a reasonable jury could find [that] Lindsey's conduct created an objectively hostile work environment based on age." But the court went on to conclude that no jury reasonably could find (1) that this name calling created a work environment so intolerable such that he was compelled to resign, or (2) that Penthouse did not exercise reasonable care to prevent age harassment, or (3) that Scurlock took advantage of preventive or corrective opportunities available to him through the company's EEO policy for reporting harassment. *See Faragher v. City of Boca Raton*, 524 U.S. 775, 807 (1998); *Burlington Indus. v. Ellerth*, 525 U.S. 742, 765 (1998).

AFFIRMED.